UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,                    :

        - v. -                                      :

                                          S2 10 Cr. 94(JSR)

MAURICE PATTERSON,                           :
        a/k/a "Pancho,"

                                  :

             Defendant.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

PREET BHARARA
United States Attorney for the Southern District of
New York,
Attorney for the United States of America

RYAN POSCABLO
TODD BLANCHE
Assistant United States Attorneys
      - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,                         :

        - v. -                                    :

                                                  S2 10 Cr. 94(JSR)

MAURICE PATTERSON,                                :
        a/k/a "Pancho,"

                              :

        Defendant.

                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

The Government respectfully submits this sentencing memorandum in advance of the

sentencing of Maurice Patterson, a/k/a "Pancho," the defendant, which is scheduled for Tuesday,

November 9, 2010, at 5:00 p.m.[1]

## BACKGROUND

**I.    Offense Conduct**

The defendant pled guilty on August 3, 2010, to Count One of Indictment S2 10 Cr. 94

(JSR), charging him with a violation of Title 21, United States Code, Section 846, for his

participation in a conspiracy to distribute more than 50 grams of crack cocaine from at least in or

about 2002, up to and including in or about February 2010.

In particular, Patterson and his co-conspirators sold large-quantities of crack in the

vicinity of Rochambeau Avenue and Gun Hill Road, in between 212th and 213th Street, Bronx,

---

[1]    During the plea proceeding, the Court directed the parties to submit any written submissions no later than one week prior to the date of the sentence. On November 2 and 3, 2010, counsel for the defendant submitted submissions to the Court. The Government writes to respond specifically to issues raised by counsel in her two separate submissions to the Court. The Government respectfully requests that the Court accept this submission late.

New York. (PSR ¶ 18).  To protect their turf, Patterson and his co-conspirators often possessed and discharged firearms at rival drug dealers.  (*Id.*).[2]

## II.    Guidelines Calculation

The Presentence Report calculated the defendant's Offense Level and Criminal History Category under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines").  In particular, pursuant to U.S.S.G. § 2D.1.(c)(1), the base offense level is 34 because the offense involved more than 500 grams but less than 1.5 kilograms of crack cocaine.

The base offense level is increased two levels, pursuant to U.S.S.G. § 2D1.1(b)(1), because a firearm was possessed during the course of the conspiracy.  (PSR ¶ 54).

Because the defendant accepted responsibility for his crimes by his conduct during the pendency of this case, and timely notified the Government of his intention to plead guilty, the offense level is decreased by three levels.  (PSR ¶ 59).

Hence, the overall offense level is 33. (*Id.* ¶ 62).

The defendant has several criminal convictions, but the parties agree that most of the prior criminal convictions are relevant conduct to the instant offense.  Probation assigned several criminal history points to Patterson.  (*See* PSR ¶¶ 65 - 84).  The Government believes that each of these convictions are part of the instant offense, except for the conviction described in paragraphs 68-70, for which no criminal history points are assigned (this conviction was not

---

[2]    The Defendant objects to paragraph 25 of the PSR, which is also the overt act in the Indictment.  After consultation with defense counsel, the parties jointly agree that members of the conspiracy possessed a quantity of crack cocaine in the vicinity of 3544 DeKalb Avenue, Bronx, New York.  The defendant and at least one co-conspirator were inside of a vehicle with crack that the conspirators intended to sell.  The parties jointly request that paragraph 25 be adjusted to reflect this position.

known to the Government at the time of the plea). The remaining convictions that are assigned criminal history points are a result of conduct undertaken by the defendant as a member of the Rochambeau Crew. Therefore, under U.S.S.G. § 4A1.2(a)(1), these sentences are not "prior sentences" because they are sentences for conduct that is part of the instant offense. The plea agreement also stipulates that the defendant receives two criminal history points because he committed the instant offense while on probation for his 2004 felony conviction. Therefore, the plea agreement stipulates that the defendant is in Criminal History Category II, while the PSR finds that the defendant is in Criminal History Category III.

Probation recommends that the defendant be sentenced to a term of imprisonment of 168 months, the bottom of the Guidelines Range. The parties stipulated to a Guidelines Range of 151 to 188 months' imprisonment (the offense level in the plea agreement is identical to that found by probation; however, probation found that the defendant is in Criminal History Category III).

As discussed below, the Government asks that this Court sentence the defendant to a term of imprisonment of at least 151 months.

## DISCUSSION

For the reasons set forth below, a sentence of at least 151 months is sufficient, but not greater than necessary, to comply with the purposes set forth in Title 18, United States Code, Section 3553(a)(2), following consideration of all the factors set forth in Title 18, United States Code, Section 3553(a).

The defendant seeks a non-guidelines sentence, setting forth various reasons for that sentence under Title 18, United States Code, Section 3553(a). The defendant asks the Court to sentence the defendant to a term of imprisonment of 57 months, notwithstanding that the

-3-

defendant pled guilty to a statute that requires a sentence of 120 months' imprisonment. The defendant argues that if the Court were to apply a 1 to 1 ratio between crack and cocaine, and if the Fair Sentencing Act of 2010 ("FSA") was retroactive, then the defendant's guidelines range would be 63 - 78 months' imprisonment.[3] The defendant is <u>wrong</u> because the FSA is <u>not</u> retroactive and a 1 to 1 crack to cocaine ratio is inappropriate.

## I.    Summary Of Argument

### A. The Fair Sentencing Act of 2010

The statutory mandatory minimums set forth in the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010) (the "FSA" or the "Act") apply only to offenses committed on or after August 3, 2010, the day on which the FSA was signed into law; for crimes committed before August 3, 2010, the mandatory penalties for distribution or possession with intent to distribute 50 grams and more, or five grams and more, of cocaine base set forth in the then-existing Title 21, United States Code, Sections 841(b)(1)(A)(iii) & (B)(iii) continue to apply pursuant to the general Saving Statute, codified at Title 1, United States Code, Section 109 (the "Saving Statute"). Pursuant to the Saving Statute, as well as ample case law interpreting the Saving Statute in this Circuit, the Supreme Court, and elsewhere, a defendant is liable for the penalties in place at the time he commits an offense, and does not benefit from an ameliorative sentencing scheme passed following his commission of the offense, unless the act repealing or amending the statute of conviction expressly states otherwise. Here, the FSA did not expressly

---

[3]    The defendant's counsel has indicated to the Government, that upon further reflection, she is withdrawing her application in her supplemental November 3, 2010 letter that the defendant receive credit for time he previously spent in custody. Hence, the Government does not respond to that letter.

provide for retroactive application; accordingly, pursuant to the Saving Statute, its effect is solely prospective.

Although there are narrow exceptions to the Saving Statute – primarily its inapplicability to issues that are purely procedural in nature – those exceptions do not apply to the FSA. Rather, the FSA effects a substantive change to the "penalty, forfeiture, or liability" for the distribution, or possession with intent to distribute, cocaine base, which is precisely the subject addressed by the Saving Statute. Any attempts to shoehorn the FSA into one of the narrow exceptions are unavailing. Moreover, reliance on cherry-picked statements by legislators to attempt to infer that the FSA should be applied retroactivity are similarly unavailing: not only was the FSA, like much legislation, ultimately a product of legislative compromise, and not only was retroactive applicability an issue debated by legislators that did not, ultimately, find its way into the final text of the statute, but such an argument defies the plain text of the Saving Statute, which states that it does not apply only if "the repealing Act shall so *expressly provide*." 1 U.S.C. § 109 (emphasis added).

It is not surprising, then, that the Second Circuit – as well as all but one federal court to address the issue, including four federal courts of appeal in published decisions – has found that the FSA applies only prospectively, and defendants may not receive the benefit of its amelioration of harsher sentencing laws in force at the time of the commission of their offenses.[4] The defendant has not, and cannot, provided any reason for this Court to disregard the plain text of the Saving Statute and the FSA or well-established caselaw; accordingly, this Court should

---

[4]    The only Court to find otherwise is United States v. Douglas, 09-202-P-H (D. Me Oct. 27, 2010). The Government contends that this decision was wrongly decided.

agree with every other federal court to consider the question and find that the FSA only applies prospectively.

The FSA – which was signed into law on August 3, 2010. In the end, among other things, the FSA imposed an 18:1 crack/powder ratio, requiring 28 grams of crack cocaine (as opposed to 500 grams of powder cocaine) to trigger a five-year mandatory minimum, and 280 grams of crack cocaine (as opposed to five kilograms of powder cocaine) to trigger a ten-year mandatory minimum. *See* FSA §§ 2(a)(1) & (2); 21 U.S.C. §§ 841(b)(1)(A)(iii) & (B)(iii). The FSA also directed the Commission to promulgate "the guidelines, policy statements, or amendments provided for in this Act as soon as practicable, and in any event not later than 90 days after the date of enactment of this Act." FSA § 8(1).

The FSA did not expressly provide that it released or extinguished any penalty, forfeiture, or liability incurred under the prior statute.

## B.    The Saving Statute

Pursuant to the Saving Statute, when a criminal statute is amended, the penalty in place at the time of the commission of an offense applies to any convicted defendant unless the amendment expressly provides otherwise. The Saving Statute provides, in pertinent part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109. The Saving Statute "abolished the common-law presumption that repeal of a criminal statute result[ed] in an abatement of prosecutions for acts committed prior to the statute's repeal[, substituting the policy] that one who violates the law should not escape sanction

by the mere happenstance that the law was repealed after the criminal act was committed." *United States* v. *Rumney*, 979 F.2d 265, 267 (1st Cir. 1992).

The Saving Statute is not limited to the repeal of statutes; it applies with equal force to amendments of law. *See, e.g., United States* v. *Bell*, — F.3d —, 2010 WL 4103700, at *10 (7th Cir. Oct. 20, 2010) (citing *United States* v. *Stillwell*, 854 F.2d 1045, 1048 (7th Cir. 1988)).

In the criminal context, by its own terms, the Saving Statute applies to the "penalty" provisions of a statute: "the saving clause has been held to bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense." *Warden, Lewisburg Penitentiary* v. *Marrero*, 417 U.S. 653, 661 (1974) (citing *Jones* v. *United States*, 327 F.2d 867 (D.C. Cir. 1963); *United States* v. *Kirby*, 176 F.2d 101 (2d Cir. 1949); *Lovely* v. *United States*, 175 F.2d 312 (4th Cir. 1949)). Accordingly, where an amendment to a statutory scheme does not "expressly provide" for retroactive application, the "determinative question is thus whether" the amended portion of the statutory scheme "is a 'penalty, forfeiture, or liability.'" *Id.* at 660. If it is, the "penalty, forfeiture, or liability" in place at the time of the commission of the offense – as opposed to that imposed by Congress after the commission of the offense – continues to apply to the accused with the same force as if it had never been repealed or amended.

### III.    The Fair Sentencing Act Of 2010 Cannot Be Applied Retroactively

####     A.    The Second Circuit, Along With Every Other Federal Court Except One To Consider The Issue, Has Determined That The Fair Sentencing Act Of 2010 Operates Only Prospectively

The Second Circuit recently issued a summary order in *United States* v. *Baldwin*, No. 09-1725-cr (2d Cir. Oct. 27, 2010) (summary order)[5] holding, in no uncertain terms, that, pursuant to the Saving Statute and the text of the FSA, the FSA has no retroactive effect. *See id.*, slip op. at 4. In particular, adopting several of the arguments discussed below, the Second Circuit held:

> [The defendant] is not entitled to the benefit fo the recently enacted Fair Sentencing Act of 2010. The Act contains no express statement that it is intended to have retroactive effect nor can we infer such intent from its language. . . . Consequently, *we must apply the mandatory minimum in effect at the time [the defendant] committed the offense in question.*

*Id.* (emphasis added). Although summary orders, such as that in *Baldwin*, "do not have precedential effect," 2d Cir. Local R. 32.1.1(a), they still have tremendous resonance in determining the proper application of the law; as the Second Circuit itself stated: "Denying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases." *United States* v. *Payne*, 591 F.3d 46, 58 (2d Cir. 2010); *see also* 2d Cir. Local R. 32.1(a) (permitting citation to summary orders "issued on or after January 1, 2007").

The Second Circuit is not alone. Every other federal court to address the issue directly – four circuit courts of appeal (in published opinions) and district judges in seven different judicial

---

[5]    The summary order in *Baldwin* was released by the Second Circuit on the date of the filing of this memorandum of law. Accordingly, no Westlaw or Lexis citation has yet been generated.

districts – has come to the same conclusion, finding that, in the absence of an "express statement" of retroactivity, the FSA applies only to crimes committed after August 3, 2010.  As the Sixth Circuit plainly stated, in the context of the Saving Statute:

> The new law at issue here, the Fair Sentencing Act of 2010, contains no express statement that it is retroactive nor can we infer any such express intent from its plain language. Consequently, we must apply the penalty provision in place at the time Carradine committed the crime in question.

*United States* v. *Carradine*, — F.3d —, No. 08-3220, 2010 WL 3619799, at *5 (6th Cir. Sep. 20, 2010).  *See also*, *United States* v. *Gomes*, — F.3d —, No. 10-11225, 2010 WL 3810872, at *2 (11th Cir. Oct. 1, 2010) ("Moreover, because the FSA took effect in August 2010, after appellant committed his crimes, 1 U.S.C. § 109 bars the Act from affecting his punishment); *United States* v. *Bell*, — F.3d —, Nos. 09-3908, 09-3914, 2010 WL 4103700, at * 10-11 (7th Cir. Oct. 20, 2010) ("The savings statute therefore prevents it from operating retroactively absent any indication from Congress. And since the FSA does not contain so much as a hint that Congress intended it to apply retroactively, it cannot help Bell here."); *United States* v. *Brewer*, — F.3d —, No. 09-3909, 2010 WL 4117368, at *7 n.7 (8th Cir. 2010) ("In any event, the letter raises no issues of import because the Fair Sentencing Act contains no express statement that it is retroactive, and thus the 'general savings statute,' 1 U.S.C. § 109, requires us to apply the penalties in place at the time the crime was committed."); *United States* v. *Brown*, No. 10-1791, 2010 WL 3958760, at *1 (8th Cir. Oct. 12, 2010) (unpublished) ("Section 841 has been amended to raise the threshold for imposition of a 120-month minimum prison sentence . . . but the amendment was not made retroactive . . . . Thus the statutory minimum existing at the time the offense was committed governs.") (citations omitted).

Every district court to address the issue directly has come to the same conclusion. *See United States* v. *Hughes*, Nos. 07-CR-33-BBC, 10-CV-570-BBC, 2010 WL 3982138 (W.D. Wis. Oct. 8, 2010); *United States* v. *Steglich*, No. 3:00CR00063, 2010 WL 3810631 (W.D. Va. Sep. 28, 2010); *Deleston* v. *Warden*, No. Civ.A. 6:10-2036-DCN, 2010 WL 3825399 (D.S.C. Sep. 8, 2010); *United States* v. *Ohaegbu*, No. 6:92-CR-35-ORL-19, 2010 WL 3490261 (M.D. Fla. Aug. 31, 2010); *United States* v. *King*, No. 6:04-CR-46-ORL-19GJK, 2010 WL 3490266 (M.D. Fla. Aug. 31, 2010); *Coleman* v. *Owen*, No. CIV.A. 0:10-2151-SB, 2010 WL 3842381 (D.S.C. Aug. 30, 2010); *United States* v. *Watson*, No. 10-CR-30323, 2010 WL 3272934 (E.D. Mich. Aug. 12, 2010); *cf. United States* v. *Miller*, No. 4:89-CR-120 (JMR), 2010 WL 3119768, at *2 n.2 (D. Minn. Aug. 6, 2010) ("On August 3, 2010, President Obama signed the Fair Sentencing Act of 2010, reducing sentencing disparities between crack and powder cocaine to 18 to 1. While the law is not retroactive, it is indicative of Congress's desire to resolve the sentencing disparities between these two drugs."); *Joyner* v. *United States*, Nos. 2:07-CR-16-01-F, 2:08-CV-34-F, 2010 WL 3063282, at *1 (E.D.N.C. Aug. 4, 2010) ("In its discretion, the court declines Joyner's invitation to revisit his sentence in light of newly enacted 'The Fair Sentencing Act,' S. 1789. Nothing in that legislation hints at retroactivity, and there has been no amendment in the advisory Sentencing Guidelines applicable to his situation.") (in the context of a Guidelines reduction). *But see United States* v. *Trice*, No. 06-20364-BC, 2010 WL 3504546 (E.D. Mich. Sep. 7, 2010) (stating, in *dicta*, that "if Defendant were to be convicted and sentenced today, the ten-year minimum may not apply . . . The statute did not, however, explicitly make those changes retroactive.").

**B.    The Fair Sentencing Act Of 2010 Modified Penalties Without Expressly Providing For Retroactive Application**

The FSA modified, among other things, the Controlled Substances Act (the "CSA"), such that the distribution, or possession with intent to distribute, 28 grams of crack cocaine – as opposed to 5 grams of crack cocaine – is now required to trigger a five-year mandatory minimum sentence and a 40-year maximum sentence, and the distribution, or possession with intent to distribute, 280 grams of crack cocaine – as opposed to 50 grams of crack cocaine – is now required to trigger a ten-year mandatory minimum sentence and a maximum sentence of life imprisonment. *See* FSA §§ 2(a)(1) & (2). There is no question that the modified subsections of the statute – Title 21, United States Code, Sections 841(b)(1)(A)(iii) & (b)(1)(B)(iii) – are penalty provisions, as opposed to a substantive provisions, because the CSA explicitly states their purpose: "any person who violates subsection (a) of this section shall be sentenced as follows . . . ." 21 U.S.C. § 841(b). In other words, the amended statutory authorization for terms of imprisonment – between 5 and 40 years under section 841(b)(1)(B)(iii), and between 10 years and life under section 841(b)(1)(A)(iii) – each clearly represents a "penalty, forfeiture, or liability." 1 U.S.C. § 109; *see also, Marrero*, 417 U.S. at 661 ("those terms 'were used by Congress to include all forms of punishment for crime.'") (quoting *United States* v. *Reisinger*, 128 U.S. at 403; *United States* v. *Ulrici*, 28 F. Cas. 328, 329 (C.C. E.D. Mo. 1875) (No. 16,594)).

The FSA, by its own terms, does not "expressly provide" that it "shall . . . have the effect to release or extinguish any penalty, forfeiture, or liability incurred under" the prior version of the CSA. 1 U.S.C. 109. It is unambiguous in that respect. Congress, of course, is fully aware of how to make a statute retroactive. *See, e.g., Nachman Corp.* v. *Pension Ben. Guar. Corp.*, 446

U.S. 359, 382 (1980) ("We have previously noted the care with which Congress approached the problem of retroactivity in ERISA . . . Title IV became effective as soon as ERISA was enacted on September 2, 1974 . . . and indeed was expressly made partially retroactive"); *St. Cyr* v. *I.N.S.*, 229 F.3d 406, 416 n.5 (2d Cir. 2000) (explaining that "Congress expressly provided a retroactive temporal reach" for certain provisions of the Illegal Immigration Reform and Immigrant Responsibility Act).

Pursuant to the Saving Statute, as well as well-established caselaw, this ends the inquiry. The terms of the Saving Statute required Congress to "expressly provide" for retroactive application of the ameliorative provisions of the FSA in order to avoid the default rule that it would not apply retroactively. Congress did not so expressly provide; therefore, the penalties in place at the time of the defendant's offense are "saved."

The courts encountered a similar situation nearly 40 years ago, following the passage of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the "CDAPCA"), which became effective May 1, 1971. Prior to the CDAPCA, certain narcotics offenders were subject to mandatory minimum sentences of imprisonment, and were ineligible for parole. The CDAPCA, which had its own "saving clause" in addition to the default rule set forth by the Saving Statute, eliminated these mandatory minimum sentences and made most offenders eligible for parole. Although the CDAPCA had its own saving clause, the Courts analyzed the issues with reference to the Saving Statute as well as the CDAPCA's internal saving clause. *See, e.g., Bradley* v. *United States*, 410 U.S. 605, 607 (1973) (placing the CDAPCA's saving clause "against the background of" the Saving Statute); *United States* v. *Ross*, 464 F.2d at 379 (analyzing the CDAPCA under *both* its internal saving clause and the Saving Statute); *Marrero*, 417 U.S. at

659-660 (analyzing the issue under the Saving Statute after consider the CDAPCA's saving clause).

In *Ross*, the defendant had sold heroin in 1968, but was convicted and then sentenced in January 1972, after the effective date of the CDAPCA. *Ross*, 464 F.2d at 377-78. He was sentenced to the mandatory minimum sentence of ten years' imprisonment. *Id.* at 377. He argued that, "since his sentence was imposed after the effective date of the new Act, he was entitled to the benefits of its more liberal sentencing provisions." *Id.* at 378. The Second Circuit rejected Ross's claim. Ross first argued that the CDAPCA's saving clause did not apply to sentencing, because it referred only to "prosecution," which, Ross argued, did not include a defendant's sentence. The Second Circuit did not agree. *Id.* at 379. However, the Second Circuit went on to hold that, in any event, the Saving Statute "also required the district to sentence Ross pursuant to" the penalty provisions in place on the date of his offense. *Id.* The Second Circuit noted that the CDAPCA "did not expressly extinguish mandatory minimum sentences" for Ross, as required by the Savings Clause. *Id.* The Second Circuit also discarded of the artificial distinction between retroactivity and retrospectivity: "[w]hile it may plausibly be argued that § 109 refers to persons already sentenced, the contrary construction seems to us more reasonable." *Id.*

The Second Circuit's reasoning was confirmed by the Supreme Court. First, the Supreme Court considered "whether a District Judge may impose a sentence [permitted under the CDAPCA] where the offender was convicted of a federal narcotics offense that was committed before May 1, 1971, but where he was sentenced after that date." *Bradley* v. *United States*, 310 U.S. at 606. Relying largely on the CDAPCA's saving clause, the Court found that he could not.

-13-

*Id.* at 610-11. In *Marrero*, though, the Supreme Court had a chance to consider a similar question directly under the Saving Statute. *Marrero* asked whether a defendant would be eligible for parole in front of the Board of Parole where he had committed his offense prior to the effective date of the CDAPCA (which had lifted prohibitions on receiving parole). *Marrero*, 417 U.S. at 654-55. After considering the CDAPCA's saving clause, the Supreme Court independently analyzed the effect of the Saving Statute. *Id.* at 659-64. In the absence of any express language rendering the CDAPCA's "ameliorative criminal sentencing laws" retroactive, the Court set forth the sole issue: "The determinative question is thus whether the prohibition of 26 U.S.C. § 7237(d) against the offender's eligibility for parole under 18 U.S.C. § 4202 is a 'penalty, forfeiture, or liability' saved from release or extinguishment by 1 U.S.C. § 109." *Id.* at 660. The Supreme Court answered that question in the affirmative. *Id.* at 663-64. One of the methods of analysis applied was simple: because a repeal of parole eligibility (the opposite of what the CDAPCA did) "would clearly present the serious question under the ex post facto clause . . . of whether it imposed 'greater or more severe punishment than was prescribed by law at the time of the . . . offense,'" the creation of parole eligibility was clearly a "'penalty, forfeiture, or liability' saved by § 109." *Id.*

The lessons learned from *Ross*, *Bradley*, and *Marrero* have served the Second Circuit well. In *United States* v. *Smith*, 354 F.3d 171, 173-75 (2d Cir. 2003) (per curiam), for example, the Second Circuit applied the Saving Statute in the case of an amendment to Title 18, United States Code, Section 3583(g), which governs the length of a sentence required upon certain violations of supervised release. The defendant sought the more lenient provision in effect as of

-14-

the time of his re-sentencing on the violation, rather than the version in effect as of the violation of supervised release. The Second Circuit, however, rejected this attempt:

> First, relevant Supreme Court and Second Circuit case law supports the Government's contention that it is the law at the time of the offense, including those provisions relating to supervised release, that governs. Second, the federal "saving statute" preserves the original penalties in effect when Smith committed the offense. . . .

*Id.* at 173; *see also id.* at 174 (Supreme Court decisions "clearly state the date on which the original offense is committed, not the date on which the defendant is sentenced for that offense, determine which version of a statute applies"); *id.* at 175 (Section 109 "saves the penalties 'incurred' by the commission of the initial offense").

The Second Circuit more recently applied the Saving Statute in *United States* v. *Klump,* 536 F.3d 113 (2d Cir. 2008). There, the defendant was convicted of possessing a semiautomatic firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). At the time of his offense, the statute called for a mandatory minimum penalty of ten years' imprisonment; by the time of sentencing, however, the statute had been amended to call for a mandatory minimum sentence of only five years. 536 F.3d at 120. The Second Circuit rejected the defendant's claim that he should have been sentenced under the provision in effect at sentencing, relying upon the Saving Statute. *Id.* at 120-21.

In short, the analysis is simple: where an act amending or repealing a prior "penalty, forfeiture, or liability" does not otherwise "expressly provide," the "penalty, forfeiture, or liability" applicable at the time of the commission of the offense applies to a defendant. It is no surprise, therefore, as discussed above, that the Second Circuit (in a summary order), four other circuit courts of appeal (in published decisions), and every single district judge to address the

-15-

issue directly has held, pursuant to the Saving Statute, that the statutory penalty provisions amended by the FSA do not benefit those who committed their crimes prior to the enactment of the FSA because there is no "express statement" stating otherwise. *United States* v. *Glover*, slip op. at 4; *United States* v. *Carradine*, 2010 WL 3619799, at \*5.

Therefore, in accordance with the plain language of the FSA, the plain language of the Saving Statute, ample historical caselaw, and a unanimous consensus among federal courts addressing the very issue at bar, the statutory penalty provisions of CSA in place prior to August 3, 2010, are "saved" with respect to all offenses committed before the enactment of the FSA.

### C.    The Fair Sentencing Act Of 2010 Expressly Extinguished A Penalty Under The Controlled Substances Act, Replacing It With A Different Sentencing Scheme, And Is Therefore Controlled By The Saving Statute

The defendant argues that the FSA did not fundamentally alter the penalty structure of the CSA, or that it imposes, at most, a procedural, rather than substantive change, in the law. Accordingly, argues the defendant, the Saving Statute does not apply. This argument has no basis in law or fact.

First, there can be little question that the FSA extinguished one penalty scheme in the CSA and replaced it with another. Prior to the enactment of the FSA, individuals who were responsible for the distribution, or possession with intent to distribute, five grams or more – but less than 28 grams – of crack cocaine were liable for a sentence between five and 40 years' imprisonment. Those who so offend now are liable only for a sentence of up to 20 years' imprisonment, with no mandatory minimums. Similarly, prior to the enactment of the FSA, individuals who were responsible for the distribution, or possession with intent to distribute, 50 grams or more – but less than 280 grams – of crack cocaine were liable for a sentence between

-16-

10 years' imprisonment and life. Those who so offend now are liable only for a sentence of between five and 40 years' imprisonment.

Second, *Harris* v. *United States*, 536 U.S. 545, 567 (2002) does not alter this analysis. *Harris* quoted *Apprendi* in a parenthetical: "The term [sentencing factor] appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence *within the range* authorized by the jury's finding that a defendant is guilty of a particular offense." *Id.* at 566-67 (quoting *Apprendi* v. *New Jersey*, 530 U.S. at 494 n.19) (brackets and emphasis in original, internal quotation marks omitted). This has no relevance to the applicability of the Saving Statute to the FSA. The *Harris* court was, pursuant to *Apprendi*, simply determining whether certain allegations necessary for an enhanced sentence under Title 18, United States Code, Section 924(c) constituted elements of the crime that needed to be proved to a jury versus sentencing factors that could be determined by the judge – it was not determining the applicability of the Saving Statute. Again, there can be no question that the FSA fundamentally alters the penalty structure of the CSA. Moreover, the Second Circuit has, in the past, explicitly applied the Saving Statute to changes in the penalty structure for section 924(c). *See United States* v. *Klump*, 536 F.3d at 120-21.

Third, the changes wrought by the FSA are substantive, and not procedural (or remedial), in nature. The Courts have long held that where a statute repeals or amends a purely procedural or remedial rule, the old procedural rule is not saved by the Saving Statute. *See, e.g., United States* v. *Obermeier*, 186 F.2d 243, 253 (2d Cir. 1951); *Marrero*, 417 U.S. at 661; *Great N. Ry. Co.* v. *United States*, 208 U.S. 452, 466-67 (1908). This narrow exception was set forth clearly in *United States* v. *Blue Sea Line*, 553 F.2d 445, 450 (5th Cir. 1988) ("If a statutory change is

primarily procedural, it will take precedence over prior law in such cases; if the change affects a penalty, the saving clause preserves the pre-repeal penalty."). However, the changes made by the FSA do not fall under the narrow exception in *Blue Sea Line* because they are not primarily procedural.

In *Blue Sea Line*, the court was faced with amendments to the Shipping Act of 1916 that converted all criminal prosecutions under the act to civil and administrative actions. *See Martin v. United States*, 989 F.2d 271, 275 (8th Cir. 1993) (explaining *Blue Sea Line*). The court noted that the change had the effect of releasing criminal penalties, but stated that cases would arise in which it may fairly be said that a statutory change both alters a penalty and modifies a procedure. *See id.* In determining whether such a statute applies to all proceedings pending at its effective date, a court may inquire into the predominant purpose of the change: procedural modification or penal reassessment. *See id..* The court determined that Congress passed the amendments in question in order to enhance enforcement of the Act by lowering the burdens caused by evidentiary and burden-of-proof rules in criminal prosecutions. *See id.* Both the definition of the offense and the prescribed punishment remained the same, however. *See id.*

Here, the change is not procedural; it is substantive. The FSA "alter[s] the range of conduct [federal] law subjected to the" mandatory minimum and maximums set forth in Title 21, United States Code, Section 841(b)(1). *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004) (discussing *Ring v. Arizona*, 536 U.S. 584 (2002)). As the Seventh Circuit recently stated when addressing the same argument: "This argument falters for the same reason as the first: the FSA expressly amended the punishment portion of 21 U.S.C. § 841. No procedures or remedies were altered by the passage of the FSA." *United States v. Bell*, 2010 WL 4103700, at *11.

Fourth, the FSA "releases" or "extinguishes" a penalty – namely, the prior sentencing schemes for crack dealers. Its amendment does not fall within the purview of status crimes, where at least one court has held that, where the statutory definition of the status is changed, the prior definition is not necessarily changed. In particular, In *United States* v. *Kolter*, 849 F.2d 541 (11th Cir. 1988), "the Eleventh Circuit concluded that the savings statute did not bar the retroactive application of a new definition of the term 'convicted felon' because the redefined term invalidated case law, not a statute, and because the redefinition did not affect punishment prescribed, just the class of individuals subject to it."[6] *Bell*, 2010 WL 4103700, at *10 (discussing *United States* v. *Kotler*, 849 F.2d at 544).

Here, to the contrary, the FSA had the primary effect of removing an existing punishment. Specifically, it removed or changed the mandatory minimum sentences available for particular criminal acts. Therefore, unlike the situation in *Kolter*, the FSA extinguished a penalty and thus is saved by the operation of § 109. Te Seventh Circuit disposed of the *Kolter* argument as well. *See id.*[7]

---

[6]    Notably, a number of circuits disagree with *Kolter*'s holding that the Saving Statute did not apply because the statutory change at issue was not substantive. *See United States* v. *Rumney*, 979 F.2d 265 (1st Cir. 1992); *Davis* v. *United States*, 972 F.2d 227, 230 (8th Cir. 1992); *United States* v. *Brebner*, 951 F.2d 1017, 1023 (9th Cir. 1991); *United States* v. *Holley*, 818 F.2d 351, 353 (5th Cir. 1987).

[7]    The Seventh Circuit also addressed attempts to turn the FSA's amendments into amendments of status by using the terms "serious" and "major" drug traffickers: Additionally, the terms "serious" and "major" drug traffickers do not appear in either the preexisting or FSA-amended versions of 21 U.S.C. § 841. They were employed by the House as part of its findings relating to the initial version of the Fair Sentencing Act it passed, *see* Drug Sentencing Reform & Cocaine Kingpin Trafficking Act of 2009, H.R. 265, 111th Cong. § 2(3), (4) (2009),

Fifth, the FSA simply alters a statutory penalty scheme, rather than substituting a right for a crime. In *Hamm* v. *City of Rock Hill*, the Supreme Court held that "sit-in" trespass prosecutions pending in state court at the time of enactment of the Civil Rights Act of 1964 must be vacated and dismissed by operation of the Supremacy Clause. In considering the related issue of whether federal prosecutions would be abated, the Supreme Court considered the application of the Saving Statute. 379 U.S. at 314. The Supreme Court held that federal prosecutions would not be saved by the savings statute because the Civil Rights Act's substitution of a "right for a crime" – making conduct that could be prosecuted as a crime before the Act a protected right after the Act – worked a "drastic" change that was "well beyond the narrow language of amendment and repeal." *Id.* at 316. In other words, in *Hamm*, Congress had determined that no legislative body would be allowed to criminalize "sit-ins"; thus rendering pending prosecutions contrary to law. *See also*, *United States* v. *Chambers*, 291 U.S. 217, 226 (1934) (holding, following the passage of the Twenty-First Amendment, that pending prosecutions under the National Prohibition Act, which was invalidated by the Twenty-First Amendment, were abated).

The passage of the FSA is not analogous to the situation in *Hamm*. The FSA did not work a drastic change like the Civil Rights Act's substitution of a right for a crime. It did not invalidate the basis for conviction under the Controlled Substances Act. Indeed, the exact same conduct is still illegal – only the available penalties have been altered. Instead, the FSA is merely

---

but their absence from the enacted version of the bill, coupled with *Kolter*'s emphasis on statutory redefinition, renders Bell's argument unavailing.

*Bell*, 2010 WL 4103700, at *10.

an "ameliorative criminal sentencing law" that repeals a harsher one in force at the time of the commission of an offense. *See Marrero*, 417 U.S. at 660-61.

**D.     The Fair Sentencing Act Of 2010 Did Not "Expressly Provide" For Its Retroactive Application**

Pursuant to the Saving Clause, the penalties in place at the time of an offense are "saved" unless the repealing or amending act "expressly provide[s]" otherwise.  1 U.S.C. § 109.  The FSA, simply put, did not so expressly provide. *See FSA; see also, Bell*, 2010 WL 4103700, at *11 ("the FSA does not contain so much as a hint that Congress intended it to apply retroactively"); *United States* v. *Brewer*, 2010 WL 4117368, at *7 n.7 ("In any event, the letter raises no issues of import because the Fair Sentencing Act contains no express statement that it is retroactive, and thus the 'general savings statute,' 1 U.S.C. § 109, requires us to apply the penalties in place at the time the crime was committed."); *United States* v. *Carradine*, 2010 WL 3619799, at *5 ("The new law at issue here, the Fair Sentencing Act of 2010, contains no express statement that it is retroactive nor can we infer any such express intent from its plain language.").

The defendant quotes a number of legislators explaining their reasons for voting for the FSA.  This is not a substitute for the "express provi[sion]" required to place an act outside of the reach of the Saving Statute. *See, e.g., Rivers* v. *Roadway Exp., Inc.*, 511 U.S. 298, 308 n.8 (1994) ("As we noted in *Landgraf*, 511 U.S., at 262-263, 114 S.Ct., at 1495-1496, the legislative history reveals that retroactivity was recognized as an important and controversial issue, but that history falls far short of providing evidence of an agreement among legislators on the subject."). Not only did Congress not expressly provide that the FSA would not be affected by the Saving Statute, but it did not even make findings concomitant with the statements of the legislatures; to the contrary, it rejected proposed alternative legislation that would have reset the crack/powder

ratio to 1:1 and made very specific findings about the nature of the prior ratio. *See* 156 Cong. Rec. H6199-200 (daily ed. July 28, 2010). Indeed, even that proposed legislation – which expressly found facts regarding issues with the prior sentencing system – would not have been retroactive. *See id.* at H6202 ("The amendments made by this Act shall apply to any offense committed on or after 180 days after the date of enactment of this Act. There shall be no retroactive application of any portion of this Act.").

In short, at best, the defendant lays forth arguments for *why* he believes Congress *should have* made the FSA retroactive. He fails to identify any express language in the statute that actually does so, though.

**IV.    A Sentence Within The Guidelines Range Would Be Both Reasonable And Sufficient, But No More Than Necessary, To Achieve The Legitimate Purposes Of Sentencing**

The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court recently stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" – that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 128 S. Ct. 586, 596 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate purposes

of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)). *Gall* v. *United States*, 128 S. Ct. at 596 n.6.

Hence, the defendant is not eligible for relief under the FSA, and therefore cannot be sentenced to a term of imprisonment of less than 120 months. Moreover, for the reasons stated herein, a sentence of 151 months' imprisonment is sufficient and appropriate in this case.

## V.    A Guidelines Sentence is Sufficient and Appropriate

The defendant argues that he should receive the benefit of a 1-to-1 crack to powder analysis. First, as noted above, even if the Court were to give some consideration to the crack to powder disparity, under no circumstances can the defendant be sentenced to a term of imprisonment less than 120 months. While arguing for a much lower sentence than the Guidelines Range, the defendant does not explain what characteristics the defendant possesses that favor such a significant downward variance. Certainly, the defendant has had a difficult life. However, the defendant has been given ample opportunity to change his course. Indeed, a cursory review of the defendant's criminal history shows that the defendant has been given numerous second chances. He has constantly chosen a path as a drug dealer who did not hesitate to use firearms to protect his drugs and his turf.

A sentence at the bottom of the Guidelines Range stipulated to by the parties - 151 months' imprisonment would be reasonable and appropriate under the policies set forth in the Guidelines, and sufficient, but not greater than necessary, to comply with the purposes set forth

in Title 18, United States Code, Section 3553(a)(2), in consideration of all of the factors set forth in Title 18, United States Code, Section 3553(a).

Among other things, such a sentence would:

- take into account and reflect the nature and circumstances of the offense and the history and characteristics of the defendant by reflecting the fact that the defendant sold drugs for over eight years (except for the times when he was in prison), and did not hesitate to use guns to protect his drugs and his turf (18 U.S.C. § 3553(a)(1));

- reflect the seriousness of the offense, which combined selfishness, violence and greed in a combustible mix that resulted in the defendant and his co-conspirators building a vast crack cocaine organization in a manner that allowed the defendant to collect thousands of dollars over the course of several years (18 U.S.C. § 3553(a)(2)(A));

- afford deterrence to others who would believe that they could make money selling crack, and who believe that it is necessary to possess and use firearms on the streets of the Bronx to protect their turf (18 U.S.C. § 3553(a)(2)(B));

- protect the public from further crimes of the defendant, who has demonstrated a penchant for violence and an inability to learn from his mistakes (18 U.S.C. § 3553(a)(2)(C); and

- a sentence of at least 151 months' imprisonment would reflect both the Sentencing Guidelines and the pertinent policy statements issued by the Sentencing Commission and it would avoid unwarranted sentence disparities among defendants with similar records who have been convicted of similar conduct (18 U.S.C. §§ 3553(a)(4)-(6)).

<u>AFFIRMATION OF SERVICE</u>

TODD BLANCHE, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York.

That on November 8, 2010, I caused one copy of the within Memorandum of Law to be served by e-mail on:

Donna Newman, Esq.
Buttermore Newman Delaney & Foltz, LLP
111 Broadway, Suite 1805
New York, New York 10006

212-229-1516

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
        November 8, 2010

_____
TODD BLANCHE